**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Gard, et al., | No. CV-17-04539-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Ocwen Loan Servicing LLC, et al., | |
| Defendants. | |

## INTRODUCTION

In November 2005, Plaintiffs David and Lisa Gard ("Plaintiffs") executed a $1.7 million promissory note and deed of trust on their home in Scottsdale, Arizona. It is undisputed that Plaintiffs haven't paid a nickel toward their mortgage since July 2010. Accordingly, in August 2017, the trustee scheduled an auction on Plaintiffs' home. Two months later, Plaintiffs filed this lawsuit, which names the following four entities as defendants: Morgan Stanley Home Loans, Morgan Stanley Credit Corporation (collectively, "the Morgan Stanley Defendants"), Ocwen Loan Servicing LLC ("Ocwen"), and U.S. Bank National Association ("U.S. Bank"). As relief, Plaintiffs seek a declaration that none of these entities may foreclose on their home because (1) the statute of limitations has expired, (2) no Defendant holds an ownership interest in the property that would allow it to foreclose, (3) the Defendants' ability to foreclose was eliminated when the loan was securitized, and (4) foreclosure would result in impermissible double recovery.

Now pending before the Court are an array of different motions. First, the Morgan

Stanley Defendants contend that although they were the original lenders and servicers on Plaintiffs' loan, they transferred their interests in that loan to other entities many years ago. As a result, they have moved for summary judgment on the ground, *inter alia*, that Plaintiffs' claims against them don't present a justiciable controversy under Article III. (Doc. 57.) In response, Plaintiffs acknowledge the Morgan Stanley Defendants weren't involved in the 2017 effort to initiate a trustee's sale—Plaintiffs merely contend that "[t]he Morgan Stanley Defendants [were] named in this action for the sake of judicial efficiency" and that "the Morgan Stanley Defendants' presence in the litigation serves a useful purpose in clarifying the legal resolution of the matter if the Court holds that the transfers claimed to have occurred are invalid." (Doc. 81 at 2, 6.) Given this clarification, the Court will dismiss Plaintiffs' claims against the Morgan Stanley Defendants for lack of subject matter jurisdiction.[1] The Court will also deny, as moot, the Morgan Stanley Defendants' request for judicial notice (Doc. 58).

Second, Ocwen and U.S. Bank (Doc. 52) and Plaintiffs (Doc. 62) have separately moved for summary judgment. As explained below, the Court concludes that all four of Plaintiffs' theories for avoiding foreclosure lack merit and will therefore grant Ocwen's and U.S. Bank's motion for summary judgment and deny Plaintiffs' motion. This outcome also makes it unnecessary to resolve Plaintiffs' motion to withdraw admissions (Doc. 77).

**BACKGROUND**

The parties have filed a total of three statements of facts and four controverting statements of facts. (*See* Docs. 54, 61, 63 [statements]; 75, 76, 80, 82 [controverting statements].) The summary below is derived from the undisputed facts contained therein.

On November 28, 2005, Plaintiffs obtained a $1,743,600 loan from Morgan Stanley Credit Corporation ("MSCC"). (Doc. 54 ¶ 2; Doc. 61 ¶ 1.) The loan was secured by a promissory note and deed of trust recorded against Plaintiffs' Scottsdale home. (Doc. 61

---

[1] The Morgan Stanley Defendants were the only parties to request oral argument on the various motions now pending before the Court. The Court will deny their request because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv. 7.2(f) (same).

¶ 2; Doc. 63 ¶ 1.) The note, which was made payable to MSCC, required Plaintiffs to make periodic payments such that the loan would be fully repaid by January 1, 2036. (Doc. 61 ¶¶ 3–4.) The Deed of Trust states that "The Note or partial interest in the Note (together with this Security Instrument) can be sold one or more times without notice to the Borrower." (*Id.* ¶ 5.)

Between November 2005 and April 2012, either Morgan Stanley Home Loans or Saxon Mortgage Services, Inc. ("Saxon") acted as the loan servicer. (Doc. 61 ¶ 13.)[2]

On May 1, 2006, the note was transferred to LaSalle Bank National Association ("LaSalle") as Trustee for Morgan Stanley Mortgage Loan Trust 2006-8AR Mortgage Pass-Through Certificates, Series 2006-8AR. (Doc. 54 ¶ 4; Doc. 61 ¶ 7.)[3] LaSalle later merged with Bank of America, effective October 17, 2008. (Doc. 61 ¶ 8.)[4] And on or about November 11, 2010, U.S. Bank acquired substantially all of Bank of America's corporate trust business, which included the note. (Doc. 54 ¶ 6.)[5]

---

[2] Plaintiffs contend they only dealt with Morgan Stanley Home Loans and Ocwen as loan servicers. (Doc. 82 ¶ 13.) Indeed, Plaintiffs appear to question whether Saxon is even a party to this action. (Doc. 81 at 1 n.1.) The briefing meanwhile suggests Saxon conducted business as Morgan Stanley Home Loans, which is a party. (Doc. 57 at 1.) But the Court has no need to resolve the issue given its dismissal of the Morgan Stanley Defendants. Suffice it to say that either Morgan Stanley Home Loans or Saxon serviced the loan from origination to April 2012.

[3] The parties dispute who made the transfer to LaSalle. All Defendants contend the note was first transferred from MSCC to Morgan Stanley Capital I Inc. ("MSCI") via blank indorsement and that MCSI then transferred it to LaSalle. (Doc. 54 ¶¶ 3-4; Doc. 61 ¶¶ 6-7.) However, Plaintiffs question the validity of any antecedent transfer between MSCC and MSCI and contend that MSCC transferred the note to LaSalle. (Doc. 80 ¶¶ 3-4; Doc. 82 ¶¶ 6-7.) In either case, as discussed *infra* Part II.B., LaSalle was either the note's holder or entitled to its indorsement.

[4] The Court takes judicial notice of the December 23, 2008 Certificate issued by the Office of the Comptroller of the Currency, which states that LaSalle merged with and into Bank of America effective October 17, 2008. (Doc. 53 ¶ 3, Ex. 3 [Certificate].). Federal Rule of Evidence 201(b)(2) permits courts to take judicial notice of matters of public record. *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001). The Court therefore finds that the merger certificate is a matter of public record for which judicial notice is appropriate. *Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1192 (C.D. Cal. 2015) (taking judicial notice of merger certificate). Moreover, although Plaintiffs contend that "LaSalle was purchased by Bank of America, it did not merge with Bank of America" (Doc. 80 ¶ 5), it is irrelevant for purposes of this lawsuit whether Bank of America technically acquired LaSalle's assets via merger or purchase.

[5] The Court takes judicial notice of the April 9, 2012 sworn, notarized affidavit executed by U.S. Bank National Association Vice President Charles F. Pedersen, which was recorded in the West Hartford Land Records. (Doc. 53 ¶ 5, Ex. 5 [Affidavit].) The

In or around July 2010, Plaintiffs stopped making payments on the loan. (Doc. 61 ¶ 14; Doc. 63 ¶ 3.)

On or about September 1, 2010, Plaintiffs received a "Notice of Intent to Accelerate" from Saxon. (Doc. 61 ¶ 17; Doc. 63 ¶ 7.) It stated that Plaintiffs were in breach of the note and that failure to pay the delinquent amount ($24,528.89) by October 4, 2019 "may" result in the loan's acceleration. (*Id.*; *see also* Doc. 60 at 38 [actual notice].)[6] The Notice did not demand the loan's full and immediate repayment. (Doc. 61 ¶ 19.) Nor did anybody initiate a trustee's sale against the property in that timeframe. (*Id.* ¶ 20.)

On or about May 31, 2011, MSCC merged with and into Morgan Stanley Private Bank, N.A. ("MSPB"). (Doc. 54 ¶ 7.)

On April 2, 2012, Ocwen began acting as the servicer of the loan. (Doc. 54 ¶ 8; Doc. 61 ¶ 21; Doc. 63 ¶ 10.)

On May 18, 2012, Plaintiffs received a "Notice of Default" from Ocwen. (Doc. 54 ¶ 9.) It stated that the loan was in default and that if the default wasn't cured by June 18, 2012, the loan "may" be accelerated, resulting in the total amount being immediately due and payable. (*Id.*; *see also* Doc. 55 at 20–23 [actual notice].)[7]

On December 18, 2014, the Deed of Trust was assigned to U.S. Bank. (Doc.

---

affidavit states that U.S. Bank acquired all of the mortgage-backed assets listed in the attached schedule, which includes Morgan Stanley Mortgage Loan Trust 2006-8AR. (*Id.* at 43.) Thus, although Plaintiffs contend that U.S. Bank merely "purchase[d] some but not all assets of Bank of America during the referenced sale" (Doc. 80 ¶ 6), and although Plaintiffs' expert similarly suggests "there is no reason to believe that Trust 2006-8AR was actually part of this purchase" (Doc. 80, Ex. 1, ¶ 27(c)), the Pederson affidavit makes clear that the assets at issue in this case were, in fact, included in the transfer. The Court accordingly finds that the affidavit is a matter of public record of which judicial notice may properly be taken. *See, e.g., Ossur hf v. Manamed Inc.*, 331 F. Supp. 3d 1005, 1009 (C.D. Cal. 2017) (listing "county land records" among documents commonly subject to judicial notice); *Durham v. Bank of N.Y. Mellon*, 2012 WL 2529188, *1 (D. Or. 2012) ("The court records and documents in county land records are properly subject to judicial notice.").

[6] Specifically, paragraph four of the "Notice of Intent to Accelerate" stated: "If the Breach is not cured by the close of business on October 4, 2010, we *may* require immediate payment in full of all sums . . . without further demand and *may* invoke forfeiture proceedings . . . ." (Doc. 60 at 38, emphases added.)

[7] Specifically, the "Notice of Default" stated at the top of page two that "On or before June 18, 2012, you must submit payment . . . for the entire total due amount stated above [$185,103.71] . . . . Failure to bring your account current *may* result in our election to exercise our right to foreclose on your property." (Doc. 55 at 21, emphasis added.)

54 ¶ 11.)[8] The following day, the United States District Court for the Southern District of New York entered a final judgment approving the settlement of a class action lawsuit between certain retirement systems and Morgan Stanley entities;[9] however, there is no indication that Plaintiffs' loan was satisfied as a result of that settlement. (Doc. 54 ¶ 12.)

On August 31, 2017, an entity called Quality Loan Service Corporation ("Quality")—which had, by that time, been named the trustee under the deed of trust—recorded a "Notice of Trustee's Sale" concerning the property. (Doc. 54 ¶¶ 13, 16; Doc. 61 ¶ 25.)

On November 1, 2017, at U.S. Bank's request, MSPB indorsed the note to U.S. Bank via allonge, which is affixed to the note. (Doc. 54 ¶ 17.)[10]

On October 25, 2017, Quality recorded a "Cancellation of Trustee's Notice of Sale" concerning the property. (Doc. 61 ¶ 26.) To date, no foreclosure sale has taken place. (*Id.* ¶ 27.)

On November 6, 2017, Plaintiffs filed this case in Maricopa County Superior Court, which Ocwen and U.S. Bank later removed to this Court. (Doc. 1.)

On June 17, 2018, Plaintiffs filed an amended complaint. (Doc. 34.)

## SUMMARY JUDGMENT STANDARD

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

---

[8] Plaintiffs dispute the assignment by questioning the existence of a beneficial interest in the deed of trust following the note's securitization. (Doc. 80 ¶ 11.) As discussed *infra* Part II.C., a loan's securitization does not alter the interests of the parties thereto. The Court also takes judicial notice of the notarized Assignment of Deed of Trust executed on July 10, 2014 and recorded in the official records of the Maricopa County Recorder on December 18, 2014. (*See* Doc. 53 ¶ 6, Ex. 6 [Assignment of Deed of Trust]); *see* Fed. R. Evid. 201(b)(2). Plaintiffs advance no evidence calling its authenticity into question. The Court in turn finds the fact of its assignment to U.S. Bank beyond reasonable dispute.

[9] *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, No. 09 CIV 2137 LTS MDH (S.D.N.Y.).

[10] Plaintiffs dispute this fact by challenging the assignment's validity. (Doc. 80 ¶ 17.) As discussed *infra* Part II.B., Arizona law entitled U.S. Bank to the note's assignment following its acquisition of the note from Bank of America, which had acquired the same from LaSalle following their merger.

if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "If . . . [the] moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103.

"Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "A genuine dispute of material fact exists if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *United States v. JP Morgan Chase Bank Account No. Ending 8215 in Name of Ladislao V. Samaniego, VL: $446,377.36*, 835 F.3d 1159, 1162 (9th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). The court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." *Rookaird*, 908 F.3d at 459. Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**ANALYSIS**

I. The Morgan Stanley Defendants

Although the Morgan Stanley Defendants advance a variety of reasons why they are entitled to summary judgment, the Court will begin by addressing their arguments that Plaintiffs' claims against them fail to present "an actual case or controversy" and fail for lack of "standing." Indeed, the Court is required to address those arguments first—if subject matter jurisdiction is lacking, the Court would be powerless to address the merits of their other summary judgment arguments. *See, e.g., Sinochem Int'l Co. v. Malaysia Int'l*

*Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) . . . ."); *Moore v. Maricopa Cty. Sheriff's Office*, 657 F.3d 890, 895 (9th Cir. 2011) ("[A] district court must first determine whether it has jurisdiction before it can decide whether a complaint states a claim.").

In a nutshell, the Morgan Stanley Defendants' jurisdictional argument is that although they were the original lenders and servicers on Plaintiffs' loan, they transferred their interests in that loan to other entities many years ago, so any declaration from this Court about their current ability to foreclose on Plaintiffs' home would be gratuitous. (*See* Doc. 57 at 8 ["[T]here is no dispute regarding [the Morgan Stanley Defendants'] current interest in the Note and Deed of Trust: there is no such interest . . . ."].) They frame this as both a lack of an "actual controversy" and as a "standing" issue. (*Id.*) In response, Plaintiffs concede that "[t]he Morgan Stanley Defendants [were] named in this action for the sake of judicial economy" and defend this approach by arguing that "the Morgan Stanley Defendants' presence in the litigation serves a useful purpose in clarifying the legal resolution of the matter if the Court holds that the transfers claimed to have occurred are invalid." (Doc. 81 at 2, 6.) Plaintiffs also state that, "[i]f the Morgan Stanley Defendants are willing to stipulate that under no circumstances [will] the authority to foreclose revert to them, the Gards[] do not object to dismissing them from the case." (*Id.* at 6.)

These concessions make clear that the Court lacks subject matter jurisdiction over Plaintiffs' claims for declaratory relief against the Morgan Stanley Defendants. Those entities haven't had anything to do with Plaintiffs' loan for many years. Two entirely different entities, Ocwen and U.S. Bank, were responsible for the aborted 2017 trustee's sale that prompted Plaintiffs to file this lawsuit. In essence, Plaintiffs are hoping to secure a declaration that *if* the Court determines in this lawsuit that the Morgan Stanley Defendants' long-ago efforts to transfer their interests in the loan to other entities were unsuccessful (meaning the Morgan Stanley Defendants would still retain those interests today), and *if* the Morgan Stanley Defendants respond to this hypothetical ruling by

attempting to initiate a foreclosure action, such a foreclosure effort would be invalid.

In other words, Plaintiffs are seeking an advisory opinion about a hypothetical set of facts. This is impermissible. "The oldest and most consistent thread in the federal law of justiciability is that federal courts will not give advisory opinions." 13 Wright & Miller, *Federal Practice & Procedure* § 3529.1 (3d ed. 2002). Instead, the Constitution limits the federal judicial power to cases and controversies. U.S. Const. art. III, § 2. "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006).

The Declaratory Judgment Act, under which Plaintiffs presumably seek relief, likewise demands "a case of actual controversy" before a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Such a controversy must be "definite and concrete . . . real and substantial." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937). Indeed, the Act's "actual controversy" requirement is indistinguishable from the Article III limitation. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007). Absent a case or controversy, "a complaint solely for declaratory relief under 28 U.S.C. § 2201 will fail for lack of jurisdiction under Rule 12(b)(1)." *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007). Federal courts also retain "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

For these reasons, the Court will dismiss Plaintiffs' claims against the Morgan Stanley Defendants due to a lack of subject matter jurisdiction.[11]

---

[11] The Court further notes that, because Ocwen and U.S. Bank aren't presently pursuing a trustee's sale of Plaintiffs' home, there is some question as to whether Plaintiffs' request for declaratory relief against those entities presents a justiciable controversy. Some courts have declined to issue declaratory relief in the absence of a pending foreclose action. *See, e.g., Chruszch v. Bayview Loan Serv., LLC*, 2015 WL 6756130, *2 (D. Or. 2015) ("The mere possibility of future foreclosure action by Defendants is not enough to create a real and immediate controversy between the parties."); *Bisson v. Bank of Am., N.A.*, 919 F. Supp. 2d 1130, 1139 (W.D. Wash. 2013) ("The allegations in the complaint are not specific enough to establish that there is any immediate controversy that is about to erupt—indeed, no specific Plaintiffs are alleged to be in default or facing foreclosure . . . ."). Nevertheless,

II. Ocwen And U.S. Bank

    A. **Statute Of Limitations**

The first issue raised in the dueling summary judgment motions filed by Ocwen and U.S. Bank (Doc. 52) and Plaintiffs (Doc. 62) is whether the statute of limitations for pursuing a foreclosure action has expired. Plaintiffs contend the statute expired in October 2016—that is, six years after the payment deadline specified in the "Notice of Intent to Accelerate" they received from Saxon in September 2010. Ocwen and U.S. Bank disagree, arguing that (1) the "Notice of Intent to Accelerate" didn't actually accelerate the loan, but merely noted that loan might be accelerated in the future, and (2) the alleged 2010 acceleration was, in any event, waived or rescinded by the "Notice of Default" that Plaintiffs received in May 2012.

The Court agrees with Ocwen and U.S. Bank. Put simply, the September 2010 "Notice of Intent to Accelerate" didn't trigger an acceleration.

In Arizona, actions for foreclosure under a deed of trust are governed by a six-year statute of limitations. *Andra R. Miller Designs LLC v. U.S. Bank, N.A.*, 418 P.3d 1038, 1042 (Ariz. Ct. App. 2018) (citing A.R.S. §§ 12–548, 33–816). "When a creditor has the power to accelerate a debt, the six-year statute of limitations begins to run on the date the creditor exercises that power." *Id.* at 1043. Critically, for acceleration to occur, "the creditor must undertake some affirmative act to make *clear to the debtor* it has accelerated

---

Ocwen and U.S. Bank haven't raised a justiciability challenge and the Court concludes, pursuant to its independent obligation to ensure that subject matter jurisdiction exists, that Plaintiffs' decision to file this lawsuit less than two months after a foreclosure action was initiated in 2017 shows "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune,* 549 U.S. at 127 (citation and internal quotation marks omitted). Admittedly, the foreclosure action was subsequently cancelled—a development that, under the right set of facts, might eliminate justiciability. *See, e.g., Kowalsky v. Deutsche Bank Nat'l Tr. Co.*, 2015 WL 5770523, *1-3 (D.N.J. 2015) (homeowners' request for declaratory relief failed to present an actual controversy, even though a foreclosure action had previously been scheduled, because the auction was cancelled in 2010, the lawsuit wasn't filed until December 2014, and there was no evidence the defendants had a present intent to foreclose); *Kerwin v. Bank of Am., N.A.*, 2014 WL 3101323, *4 (D. Minn. 2014) (identifying cancellation of foreclosure auction as an alternative basis for denying declaratory relief). Such facts, however, aren't present here. Indeed, the filings by Ocwen and U.S. Bank in this matter give the distinct impression that they intend to pursue foreclosure if and when they prevail.

the obligation, even if the parties contractually agree the option to accelerate a debt need not require a notice to the debtor." *Id.* at 1043 (quotation omitted). Common examples include demanding full payment before all installments are due, commencing foreclosure proceedings, filing a debt collection action, or repossessing the property. *Hummel v. Rushmore Loan Mgmt. LLC*, 2018 WL 3744858, *4 (D. Ariz. 2018) (listing examples). None describes the notice issued here.

Still, Plaintiffs insist the Notice's title ("Notice of Intent to Accelerate") and warning that acceleration "may" follow a failure to pay the delinquent amount were clear enough. (Doc. 79 at 5–6.) This argument lacks merit. Neither statement reasonably communicated that acceleration *had* occurred—to the contrary, these statements merely noted the possibility that the right to accelerate *could* be exercised in the future. *Hummel*, 2018 WL 3744858, at *4 (finding defendant's "notice of default and intent to accelerate does not 'make clear' that the debt had in fact been accelerated").

Context dispels any lingering doubt. The notice begins by informing Plaintiffs that they are in default and specifying the steps by which they might cure the default. (Doc. 63 at 31.) Only after doing so does the notice discuss the possible consequences of failing to pay the delinquent amount—namely, by listing the same acts that ordinarily trigger acceleration. (*Id.* [warning of possible demand for immediate full payment, invocation of foreclosure proceedings, and if permitted, filing a debt collection suit].) Plaintiffs mistake these threats for inevitabilities. And they do so despite the notice's subsequent assurance that Plaintiffs "have the right to reinstate the Note *should we accelerate* all sums due under the Note," as well as its invitation "to work with [Plaintiffs] to resolve this matter and *avoid the necessity of accelerating payment of your loan and possible foreclosures*." (*Id.,* emphases added.) Thus, the notice did not merely stop short of acceleration. It affirmatively put off the decision, invited Plaintiffs to discuss resolution without acceleration, and told them to be on the lookout for specific actions by which acceleration might later occur.

Finding no genuine dispute as to whether the notice accelerated Plaintiffs'

obligation under the note, the Court grants summary judgment to Ocwen and U.S. Bank on Plaintiffs' statute of limitations claim.

B. **Ownership Challenge**

Plaintiffs likewise fail to rebut U.S. Bank's ownership of the note and foreclosure authority as holder of the deed of trust.

Arizona law provides for enforcement of a negotiable instrument by its "holder." A.R.S. § 47–3301. A "holder" is defined as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." *Id.* § 47–1201(B)(21)(a). Possession of negotiable instruments is transferred by "negotiation." *Id.* § 47–3201(A). Effective negotiation typically requires both "transfer of possession of the instrument and its indorsement by the holder." *Id.* § 47–3201(B). But "[i]f an instrument is payable to bearer, it may be negotiated by transfer of possession alone." *Id.* Indeed, "[a] person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument." *Id.* § 47–3301.[12]

Plaintiffs suggest the questionable antecedent transfer of the note from MSCC to MSCI—and ostensibly nonexistent transfers following subsequent mergers and acquisitions—calls into question the subsequent indorsement by allonge from MSPB to U.S. Bank. (Doc. 62 at 7–9; Doc. 79 at 8–9.) U.S. Bank maintains that (1) its "undisputed possession of the Note," standing alone, entitles it to seek foreclosure "regardless of how the Note was transfered" and (2) the underlying transfers were, in any event, valid. (Doc. 52 at 10–12; Doc. 90 at 6-7.)

The Court agrees with U.S. Bank. If the original blank indorsement to MSCI was valid, U.S. Bank's possession of the note makes it the holder. *See* A.R.S. § 47–3205(B) ("When indorsed in blank, an instrument becomes payable to bearer and may be negotiated

---
[12] Arizona law would protect Plaintiffs against a deficiency judgment following a trustee's sale, even if the sale was made for the wrong beneficiary. *See* A.R.S. § 33–814(G) (precluding deficiency judgments after trustee sale of residential property); *Hogan v. Wash. Mut. Bank, N.A.*, 277 P.3d 781, 784 (Ariz. 2012) (refusing "show the note" requirement based on said protection).

by transfer of possession alone until specially indorsed."). If not, MSPB's indorsement by allonge accomplished the same result. *See id.* § 47–3204(A) ("For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument."). In the latter scenario, the note's transfer would have given its transferee a "specifically enforceable right to the unqualified indorsement of the transferor." *See id.* § 47–3203(C). This right then would have passed by way of merger and acquisition from LaSalle to Bank of America to U.S. Bank. U.S. Bank's later request that MSPB, as successor by merger to MSCC, indorse the note to U.S. Bank thus merely served to resolve any lingering uncertainty concerning the sufficiency of possession alone. *Id.* (requiring indorsement to complete negotiation of instrument previously transferred for value).

Plaintiffs' remaining arguments fail to create a reasonable dispute concerning U.S. Bank's alleged lack of note possession. Relying on an affidavit from their mortgage expert, Plaintiffs argue that stamping the note "Original" calls its originality into question and that the presence of "ample room for endorsement" on the note's final page undermines the validity of the attached allonges. (Doc. 88 at 5.) But Plaintiffs offer no legal basis for either view. The Court meanwhile finds nothing inherently suspect about stamping documents to keep track of originals. And so long as it is affixed to the note, indorsement may be made via allonge.[13] *See* A.R.S. § 47–3204(A). Moreover, "[a]n indorsement on an allonge is valid even though there is sufficient space on the instrument for an indorsement." *Id.*, cmt. 1.

U.S. Bank's ownership of the note is thus beyond reasonable dispute, as is its foreclosure authority as trustee. *Erickson v. Ditech Fin., LLC*, 2017 WL 1508596, *8-10 (D. Ariz. 2017). The Court therefore grants summary judgment to Ocwen and U.S. Bank on Plaintiffs' foreclosure authority claim.

…

---

[13] Plaintiffs make no argument in their briefs disputing whether the allonges were attached to the note. The Court accordingly considers the issue undisputed.

C. **Effect Of Securitization On Ability To Foreclose**

Plaintiffs contend that investors in Morgan Stanley Mortgage Loan Trust 2006-8AR Pass-Through—that is, the real estate mortgage investment conduit ("REMIC") that includes their mortgage—cannot initiate foreclosure proceedings. (Doc. 62 at 9–10.) They reach this conclusion by relying on an (at best) tangentially related Washington Supreme Court case, which they say bolsters their expert's conclusory opinion that a REMIC trust cannot foreclose on a homeowner. (*Id.* at 9, citing *Cashmere Valley Bank v. State Dep't of Revenue*, 334 P.3d 1100 (Wash. 2014).)

This argument is unavailing. Even assuming, for the sake of argument, that REMIC trust investors cannot foreclose on Plaintiffs' home, that doesn't resolve the foreclosure rights of the trustee and noteholder—in this case, U.S. Bank.

To the extent Plaintiffs suggest their mortgage's securitization immunizes it from foreclosure altogether, the opposite is true. Indeed, "[t]he argument that parties lose their interest in a loan when it is assigned to a trust pool or REMIC has been rejected by numerous courts." *Logvinov v. Wells Fargo Bank*, 2011 WL 6140995, *3 (N.D. Cal. 2009); *accord Albritton v. Tiffany & Bosco, P.A.*, 2013 WL 3153848, *8 (D. Ariz. 2013).

Thus, the Court will grant summary judgment to Ocwen and U.S. Bank on Plaintiffs' argument that their mortgage's securitization limits U.S. Bank's foreclosure authority.

D. **Double Recovery**

The final "claim for relief" asserted in the amended complaint is that the "Morgan Stanley Mortgage Loan Trust 2006-8AR Pass-Through Trust Certificate Holders have already recovered" for Plaintiffs' default pursuant to a settlement in another case, so "[a]llowing these certificate holders to also foreclose on the Gards' home would amount to double recovery on the part of the certificate holders," which "provides an independent basis for declaring that none of the named Defendants has authority to execute a trustee sale of the Property." (Doc. 34 ¶¶ 61–64.)

In their motion for summary judgment, Ocwen and U.S. Bank challenge this claim,

arguing that (1) the "Morgan Stanley Mortgage Loan Trust 2006-8AR" wasn't a party to the settlement agreement in the other case and (2) it is self-evident that the loan still hasn't been paid off. (Doc. 57 at 16–17.) Notably, Plaintiffs do not address or dispute these arguments in their response; in fact, they concede both points. (Doc. 63 ¶ 3; Doc. 80 ¶ 12.)

The Court will grant summary judgment to Ocwen and U.S. Bank on this claim. This is primarily because Plaintiffs haven't adduced any evidence to support the allegation in their complaint that the Morgan Stanley Mortgage Loan Trust 2006-8AR was a party to the settlement agreement at issue.

***

Accordingly, **IT IS ORDERED** that:

(1) The Morgan Stanley Defendants' motion for summary judgment (Doc. 57) is **granted**;

(2) The Morgan Stanley Defendants' request for judicial notice (Doc. 58) is **denied as moot**;

(3) Ocwen's and U.S. Bank's motion for summary judgment (Doc. 52) is **granted**;

(4) Plaintiffs' motion for summary judgment (Doc. 62) is **denied**;

(5) Ocwen's and U.S. Bank's request for judicial notice (Doc. 53) is **granted in part**;

(6) Plaintiffs' motion to withdraw admissions (Doc. 77) is **denied as moot**; and

(7) The Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 7th day of August, 2019.

Dominic W. Lanza
United States District Judge

- 14 -